## · H. F. Kriger *v.* Hanover National Bank.

1. Corporation. *Subscription to stock. What constitutes.*

    One who authorizes the secretary of a new corporation to procure some of the stock for him, and is notified a certain amount has been secured, and thereafter pays an assessment, and assumes to assign the stock, is a subscriber for the stock, although he does not subscribe the stock book and no certificate is ever issued, and the only memorandum of the transaction is a pencil entry of his name and the amount of the stock in the list of subscriptions kept by the corporation.

2. Same. *Unpaid subscription. Transfer. Liability of stockholder. Limitation. Code* 1880, § 1037.

    Under § 1037, code 1880, making a stockholder liable, to the amount of his unpaid stock, for corporate debts created during his ownership thereof, the liability to continue for one year after a transfer thereof, the year does not begin until a transfer in the manner provided by the said statute, namely, by indorsement and delivery of the stock certificate and registry of the transfer on the books of the corporation.

From the circuit court of Washington county.

Hon. R. W. Williamson, Judge.

Appellee, the Hanover National Bank, of New York, having recovered a judgment against the Delta Waterworks, Sewerage & Light Company, a corporation in Greenville, Miss., and execution having been issued and returned *nulla bona,* brought this action against appellant, alleging that he had subscribed for $1,000 of the stock of said corporation, which remained unpaid. Plaintiff claimed defendant was liable by virtue of § 1037, code 1880, which subjects a stockholder to individual liability for debts of the corporation, contracted during his ownership of stock, to the amount of the balance due and unpaid for the stock subscribed for by him, this liability to continue for one year after a sale or transfer of the stock. Said

section provides that stock shall be transferable by the indorsement and delivery of the stock certificate and the registry of such transfer on the books of the company.   The entire section is quoted in the opinion.

Appellant defended upon two grounds: 1. That he had never been a stockholder in said corporation.   2. That if he had been a subscriber, he had transferred his stock more than a year before the suit was brought.

On the trial plaintiff produced the original list of subscribers to the stock of said corporation, which contained the name of appellant, and opposite it the figures $1,000, all of which was written in pencil between the name of one Greenley and the amount of his subscription.   The stock list was not signed by appellant.   The mode of this entry was explained by Robertshaw, the secretary and treasurer of the corporation at the time of its organization, who testified that $1,000 of stock was awarded to appellant, on his application, out of $2,000 of stock which had been subscribed for by Greenley, and that this was with the consent of Greenley and the company.   Robertshaw further testified that he could not say appellant authorized the stock to be taken, but that it was awarded to him in good faith, and appellant confirmed the subscription by his subsequent actions; that he was not certain appellant ever attended a meeting of the stockholders, but was under the impression he did attend one meeting; that appellant seemed interested in the corporation in a general way, and would occasionally make inquiries as to its status.

Defendant, as a witness in his own behalf, testified that he never subscribed in writing for any of the stock, and never authorized anyone else to sign his name therefor; that sometime after the organization of the corporation he had a conversation with Robertshaw, who told him that he had missed a good thing, and that he ought to have taken some of the stock; that defendant told him if he had known of it he would perhaps have taken some stock, and that he would take some now, but

Robertshaw informed him it was too late, as all the stock had been taken; that Robertshaw, however, asked him if he would take some of the stock if it could be procured for him, saying that perhaps some person might have taken more than he was willing or able to pay for; that defendant said "all right," and that this was all that passed between him and Robertshaw at that time.    Afterwards Robertshaw called on defendant for $10, telling him that he had gotten for him $1,000 of the stock; that defendant replied: "All right, but where is my stock?" and was told that it had not then been issued.    Defendant thereupon paid the $10, and took a receipt therefor.    He heard no more about the matter until sometime in May, 1892, when one Wetherbee asked him what he would take for his stock, and defendant disclaimed owning any, saying that he had never gotten any, but only a promise of some.    Wetherbee insisted that he did own stock, and urged him to say what he would take for it; whereupon, appellant told him that he would give it to him if he had any, and to draw up a transfer, and he would sign it, and this was done.    This transfer recited that, in consideration of Wetherbee's assuming all liability of defendant as owner of the stock transferred, defendant transferred and assigned to Wetherbee all his stock in the Delta Waterworks, Sewerage & Light Company, and authorized the secretary to transfer the certificate to him, or to issue the same in his favor, if the stock had not already been issued.    Defendant testified that he owned stock in several other corporations, and that, whenever he paid his money for stock, he always got the certificate; that he supposed the $10 paid to Robertshaw was part of the price he was paying for the stock, and not an assessment on it.    The foregoing testimony of the defendant did not differ materially from that of Robertshaw, except that the latter was positive that the $10 was collected as an assessment upon the stock, and was paid without objection by defendant.

There was some other testimony tending to show that defendant had participated in a meeting of the stockholders, and

that, when a second call for stock was made, he had offered to give his stock away, but as the court passes upon this branch of the case in the light of defendant's own testimony, it is not deemed necessary to make any further statement.

Touching the second ground of defense—namely, that the stock had been transferred one year or more before the suit was brought—the facts, as found by the court from the record, are stated in the opinion.

There was a motion for a new trial, on the ground, among others, of newly discovered evidence to the effect that, more than a year before the suit was brought, an entry had been made on the books of the corporation crediting Wetherbee, not defendant, with an assessment on the stock; but, as the court holds that, in order to relieve defendant from liability to creditors, the transfer should have been made only in the manner prescribed by the statute, it is not necessary to set out further the newly-discovered testimony.

*Campbell & Starling,* for appellant.

1. If the evidence is sufficient to warrant a verdict for appellant in any view of it that might be legally taken, it was error to give the peremptory instruction. *Lowenstein* v. *Powell,* 68 Miss., 73; *Railroad Co.* v. *Boehms,* 70 *Ib.,* 11. The uncontradicted evidence is that appellant did not sign any subscription for stock, or authorize anyone to do so. The stock was set aside for him, and the effort is to show that he ratified this by his acts. These acts, it is contended, consisted of his payment of a call upon the stock and of his inquiring, in a general and stated way, as to the progress of the company, his possible attendance on some of the meetings, and his statement to some one that he did not intend to pay any more, but would get rid of his stock, and of his undertaking to transfer the stock to Wetherbee. It is not denied that appellant, when he transferred the stock, disclaimed owning any, and transferred it merely because others were contending that he did own it.

Appellant positively denies that he attended any of the meetings, or that he was ever notified to attend any, and says that whenever he was spoken to about the matter he disclaimed owning any stock. Thus, the only act relied on as ratification, not denied, is the payment of the $10 to Robertshaw. There is no evidence that appellant knew, when he paid the $10, that it was a call upon the stockholders. It is. apparent from his testimony that he understood it was a part of the purchase price of the stock; that he was to purchase the same and to pay for it in full when it was issued—that is, when the certificate was produced. When he paid the $10, he asked ''where is my stock?'' We submit that this is a view of the evidence which might be legally taken, and that it is sufficient to warrant a verdict for appellant, if the jury should so find.

If the appellant intended to buy the stock and pay the ten dollars towards its purchase, understanding he was to pay the balance when the certificate was issued, he is not liable for the stock until the certificate is tendered him. 87 Am. Dec., 394, note; 37 Iowa, 503. There cannot be ratification of the act of another without full knowledge of the circumstances surrounding the act. Angell & Ames on Corp., § 517.

2. The transfer of the stock was effectual to absolve defendant from liability to the company or its creditors for the unpaid balance of the stock. While it is true the transfers must be made upon the books of the company as a general rule, there are exceptions, and one exception is where the company or its agents are at fault in not recording the transfer. Morawetz on Private Corporations, §§ 342, 603; 49 N. Y., 216; 20 Mo., 382; 118 U. S., 655; 23 Am. & Eng. Enc. L., 883. Section 1037, code 1880, means that the stockholder is liable only for debts contracted during his ownership of stock, which liability shall cease one year after the transfer of stock. It does not mean that he shall be liable for debts of the corporation contracted not only during his ownership, but also for such as may be contracted within one year after the transfer of the stock.

Where the statute prescribes the method of transferring the stock, that may be waived by the company. It is especially inapplicable to transfers where there are no certificates to be surrendered or stock register in which to record the transfer. If Kriger is a stockholder at all, it is by ratification or mere acquiescence resting upon matters *in pais*, and creditors cannot complain that the transfer was not registered upon the books of the corporation. They dealt with the corporation when he was an unregistered stockholder, and they ought not to complain that he transferred his stock without registration. He did all he could do, and if the transfer was not registered, it was the fault of the corporation.

No brief on file for appellee.

COOPER, C. J., delivered the opinion of the court.

The peremptory instruction was properly given.

1. The appellant, according to his own testimony, was a subscriber to the capital stock of the Delta Waterworks, Sewerage & Light Company. He did not, it is true, subscribe the stock book, but he authorized Robertshaw to procure a part of the stock for him, and recognized and ratified his act in so doing, and paid a call upon the stock, and afterwards assigned it to Wetherbee. In the face of these conceded facts, it avails nothing for the appellant to vaguely suggest that he expected to have the stock delivered to him as a condition on which he was to be bound. Nothing was ever said by him or to him indicating that he or the company so understood his contract of subscription; nor is it shown that he ever demanded the stock. Cook on Liability of Stockholders, § 192.

2. The attempted transfer of the stock by the appellant to Wetherbee does not relieve him from liability to the demand of the appellees. By the code of 1880, § 1037, it was declared that "in all joint-stock corporations hereafter created, whether under this chapter or otherwise, each stockholder shall

be individually liable for the debts of the corporation, contracted during his ownership of stock, for the amount of balance that may remain due or unpaid for the stock so subscribed for by him, and may be sued by any creditor of the corporation, and such liability shall continue for one year after the sale or transfer of the stock. The stock in all such companies shall be transferable by the indorsement and delivery of the stock certificate and the registry of such transfer in the books of the company."

The debt of the Delta Waterworks, Sewerage & Light Company was contracted on the eighteenth day of July, 1891; the defendant claims to have transferred his stock to Wetherbee on the twenty-first of May, 1892; the present suit was commenced on the twenty-seventh of January, A.D. 1894.

Accepting as true the testimony of the appellant as to what was done when he disposed of his stock to Wetherbee (in which he is contradicted by the secretary of the company), this is what transpired: Kriger executed the transfer, and took it to the secretary, asking him to make an entry thereof on the books of the company. This the secretary agreed to do, but said the books were at another house. Kriger heard nothing more of it, and did not know that the transfer was ever entered on the books. In fact, no entry of the transfer was at any time made.

In some of the states, under statutes making stockholders liable for the debts of the company, the property of a stockholder was held to be leviable under execution on a judgment against the company, but that the person on whose property the levy was made must be a stockholder at the time of the levy. *Leland* v. *Marsh*, 16 Mass., 389; *Marcy* v. *Clark*, 17 *Ib.*, 329. To avoid liability, the practice was for the solvent stockholders to transfer to insolvents their stock in insolvent companies. *Stanley* v. *Stanley*, 26 Me., 191; *Ingalls* v. *Cole*, 47 *Ib.*, 530. To meet this device, it was provided that the liability should continue for a certain time after the transfer of the stock.

We have not access to the original statutes of Maine. In the revision of 1883, ch. 46, § 37, it is distinctly provided that the liability of the stockholder shall continue for one year after the "transfer is recorded on the corporation books," and such is the provision in statutes of other states. Rev. St. of Wisconsin of 1878, §§ 1751, 1756.

In *Stanley* v. *Stanley*, 13 Me., 191, in a case involving the liability of a stockholder for a debt contracted on the 27th of July, it was shown that his stock was transferred by an entry on the books of July 31. He contended that he was not liable, because, in fact, he had disposed of his stock before July 27, and offered evidence to prove the fact. The statute did not, in express language, provide that entry on the books of the company should be required. On this the court held that, as to creditors, the books of the company must show the transfer, or they would not be bound.

Our statute, in the section fixing and defining the liability of stockholders to creditors, after declaring that such liability "shall continue for one year after the sale or transfer," proceeds immediately to declare how transfers of the stock may be made, viz.: "by the indorsement and delivery of the stock certificate and the registry of such transfer on the books of the company."

How are creditors of the company to inform themselves who are stockholders thereof? The answer, we think, is to be found in the statute, which continues the liability for one year after the sale or transfer, and then proceeds to define how the transfer may be made, viz.: by entry thereof on the books of the company. As to creditors, whose rights are in this section the subject of consideration, one, and only one, method of transferring his stock is permitted to the stockholder. Whatever may be the effect of a transfer otherwise made, as between the transferee and transferer, or between these and the company, nothing else can avail to discharge the liability of the stockholder to creditors than the transfer and the entry thereof

on the books of the company and the lapse thereafter of the time named in the statute.    As the appellant was a stockholder when the debt due to the appellee was contracted by the company, and has never caused an entry of the transfer of his stock to Wetherbee to be made on the books of the company, he is liable to the demand of the creditor to the extent of his unpaid subscription, and the judgment is

*Affirmed.*